UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- x

ALEJANDRO MONTERO,                            :
                                              :
                            Plaintiff,        :        REPORT AND
                                              :        RECOMMENDATION
            -against-                         :
                                              :        No. 24-CV-04349-RER-JRC
BARBU GOURMET DELI INC. and                   :
YONNI A. CRUZ, individually,                  :
                                              :
                            Defendants.       :
----------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

Plaintiff Alejandro Montero ("plaintiff") brings this wage-and-hour action against defendants Barbu Gourmet Deli Inc. ("Barbu Gourmet" or "corporate defendant") and Yonni A. Cruz ("Cruz" or "individual defendant") (collectively, "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL") § 190 *et seq.*, and the NYLL's Wage Theft Prevention Act ("WTPA"). *See generally* Compl., Dkt. 1. Upon plaintiff's application and in light of defendants' failure to defend this action, the Clerk of Court entered defendants' default on October 31, 2024. *See* Dkt. 13. Currently pending before this Court, on a referral from the Honorable Ramon E. Reyes, Jr., is plaintiff's motion for default judgment, seeking unpaid minimum and overtime wages, liquidated and statutory damages, prejudgment interest, and costs. *See* Mot. for Default J., Dkt. 15; Order Referring Mot. dated July 2, 2025; Mem. of Law in Support of Pl.'s Mot. for Default J. ("Pl.'s Mem."), Dkt. 15-1.

For the reasons described below, this Court respectfully recommends granting plaintiff's motion for default judgment in part.

**Factual Background**

The following facts are taken from the Complaint (Dkt. 1) and plaintiff's affidavit (Dkt. 15-6) and are assumed true for purposes of this report and recommendation.

Corporate defendant Barbu Gourmet is a New York corporation with its principal place of business in New York.  Compl. ¶ 18.  Individual defendant Cruz "possessed operational control over defendant Barbu Gourmet Deli Inc. by reason of his ownership interest, and control of significant functions of Defendant Corporation."  *Id.* ¶ 21.  In particular, Cruz "(i) was known and referred to as 'Boss' by Plaintiff and the other similarly situated employees of Defendant Barbu Gourmet Deli Inc.; (ii) personally hired Plaintiff, setting his wages and compensation; (iii) regularly interacted with and supervised Plaintiff's work; (iv) established Plaintiff's work schedules and workload, giving him daily orders and instructions; (v) maintained and personally reviewed employee records; (vi) paid Plaintiff weekly wages; (vii) had the authority to and did in fact discipline Plaintiff during the course of his employment; and (vii) ultimately terminated Plaintiff's employment."  *Id.*

From June 1, 2023 until May 15, 2024, plaintiff worked at defendants' store, located at 643 Marcy Avenue, Brooklyn New York 11206.  *Id.* ¶ 15; Aff. of Alejandro Montero ("Pl.'s Aff."), Dkt. 15-6 at ¶ 4.  Plaintiff was a cook and stockroom worker, *see* Compl. ¶ 15, whose "duties required neither discretion nor independent judgment."  Pl.'s Aff. ¶ 4.  During his employment, plaintiff regularly worked six days per week for a total of 69 hours per week except from October 1, 2023 until March 18, 2024, when he worked 57 hours per week.  Compl. ¶ 33; Pl.'s Aff. ¶ 9.

From June 1, 2023 until December 31, 2023, plaintiff was paid a flat rate of $650.00 per week, and from January 1, 2024 until May 15, 2024, he was paid $800.00 per week.  Plaintiff alleges that he was not paid an overtime premium for those hours he worked in excess of 40 per week and was not paid the required minimum wage throughout his employment.  Pl.'s Aff. ¶¶ 13, 15; Compl. ¶ 34.  Plaintiff did not receive a wage notice or wage statements.  Compl. ¶¶ 40–

2

41; Pl.'s Aff. ¶ 17.

### Procedural Background

Plaintiff alleges that defendants failed to pay plaintiff minimum and overtime wages pursuant to the FLSA and NYLL (First and Second Causes of Action); failed to provide a wage notice at time of hiring under the NYLL (Third Cause of Action); and failed to provide accurate wage statements under the NYLL (Fourth Cause of Action).[1]

On June 19, 2024, plaintiff commenced this action. *See generally* Compl. Both defendants were properly served on August 9, 2024. *See* Dkts. 7, 8. Defendants' responses to the Complaint were due August 30, 2024. *Id.* Defendants have failed to answer the Complaint or otherwise appear in this case. The Clerk of Court entered default against both defendants on October 31, 2024. *See* Clerk's Entry of Default, Dkt. 13. On June 30, 2025, plaintiff filed the instant motion for default judgment, which Judge Reyes referred to the undersigned. *See* Mot. for Default J., Dkt. 15; Order Referring Mot. dated July 2, 2025.

### Discussion

**I.    Default Judgment Standard**

Under Rule 55 of the Federal Rules of Civil Procedure, entering a default judgment against a defendant is a two-step process. *See City of New York v. Mickalis Pawn Shop, LLC,*

---

[1] In the Complaint, plaintiff also requested compensation for unpaid spread of hours wages and attorney's fees. Compl. ¶¶ 7, 8. In his motion for default judgment, however, plaintiff waived his request for attorney's fees. Pl.'s Aff. ¶ 23 ("I waive my claim for attorney's fees"). Further, in his motion for default judgment, plaintiff did not advance any argument in support of his request for unpaid spread of hours wages. *See generally* Dkt. 15-1. Accordingly, the Court finds that plaintiff has abandoned his claim for spread of hours compensation. *See Moran v. Tacos El Gallo Giro Corp.*, No. 23-CV-8167, 2025 WL 2813675, at *24 (E.D.N.Y. Oct. 3, 2025) (recommending finding that plaintiff has abandoned claim that was not included in proposed judgment or damages calculation); *Arch Specialty Ins. Co. v. Canbert Inc.*, No. 19-CV-5920, 2021 WL 1200329, at *3 n.3 (E.D.N.Y. Mar. 9, 2021) (recommending that claim asserted in complaint but "not discussed in the Motion" for default judgment be deemed abandoned), *report and recommendation adopted*, 2021 WL 1193004 (E.D.N.Y. Mar. 30, 2021); *Bd. of Trs. of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund v. Harbor Island Contracting, Inc.*, No. 13-CV-6075, 2015 WL 1245963, at *2 n.1 (E.D.N.Y. Mar. 16, 2015) ("[Plaintiffs] do not pursue this relief in their motion for default judgment, and thus the Court deems this request abandoned.").

645 F.3d 114, 128 (2d Cir. 2011) ("Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend:  first, the entry of a default, and second, the entry of a default judgment." (citation omitted)).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  *See* Fed R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").  This first step is nondiscretionary.  *See United States v. Conolly*, 694 F. App'x 10, 12 (2d Cir. 2017).  Second, after the Clerk of the Court enters a defendant's default, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the plaintiff may apply to the court for a default judgment.  *See* Fed R. Civ. P. 55(b)(2).

Here, on October 31, 2024, the Clerk of the Court noted the default of defendants Barbu Gourmet and Yonni A. Cruz.  *See* Dkt. 13.  Since then, defendants have not appeared or moved to vacate the entry of default.

Whether or not a default judgment is then issued is within the discretion of the court.  *See Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54 (E.D.N.Y. 2022) ("The decision to grant a motion for default judgment is left to the sound discretion of the district court.").  When evaluating a plaintiff's application for a default judgment, "a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see also TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd.*, 536 F. App'x 45, 46 (2d Cir. 2013) ("[P]rior to entering default

4

judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law." (internal quotation marks and citation omitted)).

"Default judgments 'are generally disfavored and are reserved for rare occasions.'" *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)). Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "afford[] litigants a reasonable chance to be heard." *Enron Oil*, 10 F.3d at 95– 96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," doubts should be resolved in favor of the defaulting party. *See id*. at 95. Accordingly, "plaintiff is not entitled to a default judgment as a matter of right" simply because defendants are in default. *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *See Mickalis Pawn Shop*, 645 F.3d at 137; *Finkel*, 577 F.3d at 84 (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor"). A fact is not considered "well-pleaded," however, "if it is inconsistent with [the] other allegations of the complaint or with facts of which the court can take judicial notice . . . or is contrary to uncontroverted material in the file of the case." *Hop Hing Produces Inc. v. Lin Zhang Trading Co., Inc.*, No. 11-CV-3259, 2013 WL

5

3990761, at *3 (E.D.N.Y. Aug. 5, 2013) (internal quotation marks and citations omitted). Ultimately, whether to grant a motion for default judgment is "left to the [court's] sound discretion." *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017).

Here, defendants did not respond to the Complaint despite proper service. Plaintiff filed affidavits of service confirming service of the motion for default judgment and this Court's order scheduling a hearing on the motion. *See* Dkts. 18, 20-7, 20-8. Defendants have nonetheless failed to respond to plaintiff's motion for default judgment or otherwise appear in this action. Accordingly, this Court recommends finding that defendants' failure to answer or otherwise respond to the Complaint constitutes an admission of the factual allegations therein, and now proceeds to consider whether those facts establish defendants' liability under federal and state law.

## II.    Liability

Plaintiff moves for default judgment on his claims under the FLSA and the NYLL. For the reasons set forth below, this Court concludes that plaintiff sufficiently alleges facts giving rise to liability.

### A.    Statute of Limitations

As an initial matter, this Court must determine whether plaintiff's claims are timely. The NYLL has a six-year statute of limitations, and the FLSA has a three-year statute of limitations for "willful" violations, which also applies to defaulting defendants. *See* N.Y. Lab. Law §§ 198(3), 663(3); 29 U.S.C. § 255(a); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) ("When a defendant defaults, the

6

violation is considered 'willful' and the three-year statute of limitations applies." (citation omitted)).

Here, plaintiff seeks to recover damages for violations of state and federal employment laws in connection with plaintiff's work for defendants from June 2023 until May 2024. *See* Compl. ¶¶ 1, 15. Because plaintiff filed the present lawsuit within one year of the alleged violations of the FLSA and NYLL, plaintiff's claims are timely under both of the relevant statutes of limitations.

### B.    FLSA

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, No. 18-CV-0006, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019). To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship existed at the time of the alleged FLSA violations and (2) the employment falls under the FLSA's individual or enterprise coverage provisions. *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-4761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

### 1.    Employer/Employee Relationship

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any

organized group of persons," *id.* § 203(a).  The FLSA further defines the term "employee" as "any individual employed by an employer."  *Id.* § 203(e)(1).  Absent a statutory exemption, employees are protected by the FLSA if they worked for a covered employer.  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  "Courts afford the term employer "an expansive definition with 'striking breadth.'"  *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-CV-1231, 2024 WL 4751732, at *5 (S.D.N.Y. Oct. 22, 2024) (quoting *Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *5 (S.D.N.Y. Mar. 9, 2020)), *report and recommendation adopted*, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024).  "Under the FLSA, '[a]n individual may simultaneously have multiple 'employers,' such that 'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'"  *Ortega*, 2024 WL 4751732, at *5 (quoting *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017)).

"There is 'no rigid rule for the identification of an FLSA employer.'"  *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374 (E.D.N.Y. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)).  Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that "directly affect the nature or conditions of the employees' employment."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).  Thus, to determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question . . . with an eye to the 'economic reality' presented by the facts of each case."  *Herman*, 172 F.3d at 139 (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33

8

(1961)); *see also Baizan Guerrero*, 2019 WL 4889591, at *4.

When examining the "economic reality" of a particular situation, the following factors are relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104–05 (quoting *Barfield*, 537 F.3d at 142). Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an alleged employer-employee relationship. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

"In accordance with these principles, a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation." *Espinoza v. La Oficina Bar Corp.*, No. 20-CV-1237, 2022 WL 987429, at *10 (E.D.N.Y. Mar. 1, 2022) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2022 WL 985836 (E.D.N.Y. Mar. 31, 2022); *see Herman*, 172 F.3d at 139. Accordingly, "joint employers, including corporate officers with the 'power to control,' may be held jointly and severally liable for FLSA violations." *Espinoza*, 2022 WL 987429, at *10.

Plaintiff's unopposed allegations are sufficient to conclude that defendants jointly employed plaintiff under the FLSA. First, plaintiff alleges that individual defendant Cruz set wages and compensation of employees, including plaintiff, established the schedules of employees, maintained employee records, and had the authority to hire, fire and discipline employees. Compl. ¶ 21. Thus, Cruz possessed "operational control" over plaintiff and was an employer under the FLSA. *See Irizarry*, 722 F.3d at 116 (applying the "economic reality" factors and holding that the individual defendant jointly employed plaintiffs where the individual

defendant possessed "functional control over the enterprise as a whole"); *see also Sarmiento Perez v. Comhar Grp. LLC*, No. 19-CV-0964, 2020 WL 1364908, at *3–4 (E.D.N.Y. Mar. 6, 2020) (applying the "economic reality" factors and finding that both defendants were jointly and severally liable where they "had authority to hire and fire [plaintiff] and to control his working conditions and compensation"), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Rodriguez v. Solares Corp.,* No. 16-CV-3922, 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

Second, and in support of joint and several liability, plaintiff alleges that the individual defendant possessed operational control over the corporate defendant, possessed an ownership interest in the corporate defendant, and controlled significant functions of the corporate defendant. Compl. ¶ 23. Further, plaintiff alleges that both defendants "acted in the interest of the Defendants with respect to [their] employees, the rate and method by which employee compensation was paid, and shared joint control over their employees." *Id.* ¶ 26. "A plaintiff's allegations that the individual defendant[] and corporate defendant are part of a common ownership or management of a business, coupled with defendants' default, are sufficient to allege joint employment following a default." *Castro v. Hyper Structure Corp.*, No. 21-CV-1391, 2022 WL 2467242, at *7 (E.D.N.Y. Mar. 7, 2022), *report and recommendation adopted*, Order dated May 18, 2022. Thus, based on plaintiff's allegations, this Court finds that plaintiff was jointly employed by the individual and corporate defendants.

### 2.      Plaintiff's Employment was Covered by the FLSA

Next, this Court must determine whether plaintiff's employment falls under the FLSA's individual or enterprise coverage provisions. The FLSA's minimum wage and overtime

provisions apply only to those "employees (1) who are *personally* 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'enterprise coverage')." *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (alterations in original) (quoting 29 U.S.C. §§ 206(a), 207(a)); *see Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam).  To properly plead enterprise coverage, a plaintiff must demonstrate that his employer has "annual gross volume of sales made or business done [of] not less than $500,000" and has two or more employees regularly and recurrently engaged in commerce or the production of goods for commerce, including "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see* 29 C.F.R. § 779.238.

Plaintiff's allegations are sufficient to conclude that defendants are subject to the FLSA. First, plaintiff claims that the corporate defendant "is engaged in interstate commerce in that it relies heavily on products that have been transported across state lines."  Compl. ¶ 19.  Plaintiff further claims that he "regularly handled produce, cornmeal, meats, fish, and poultry and other food ingredients produced, grown, raised or manufactured outside of New York State, which, by necessity, had to travel in interstate commerce into the State of New York, for sale at Defendants' deli."  Pl.'s Aff. ¶ 6.

Second, plaintiff alleges that "Defendants had a gross annual volume of sales in excess of $500,000," and "[a]t all times during [his] employment, Defendants had more than 11 total employees working in their establishment."  *Id.* ¶¶ 7–8.  Courts in this district have held that conclusory allegations similar to those made here with respect to enterprise coverage are

sufficient when it was otherwise "reasonable to infer that the myriad goods necessary to operate [the business] . . . do not exclusively come from New York State." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see also Santos v. Cancun & Cancun Corp.*, No. 21-CV-0192, 2022 WL 1003812, at *4 (E.D.N.Y. Feb. 17, 2022); *Wuzi Jiao v. Kitaku Japanese Rest., Inc.*, No. 16-CV-2694, 2020 WL 2527588, at *5–6 (E.D.N.Y. Mar. 13, 2020), *report and recommendation adopted*, 2020 WL 2523109 (E.D.N.Y. May 18, 2020). Further, courts in this District have routinely inferred, even absent specific allegations, that companies engaged in the supermarket industry are engaged in interstate commerce. *See Pena v. Super Econ. One Way Supermarket Corp.*, No. 20-CV-3060, 2021 WL 4755603, at *5 (E.D.N.Y. Sept. 8, 2021) ("Given Super Economics' annual sales, it can be inferred that some of the materials sold in the supermarket originated in interstate commerce."), *report and recommendation adopted*, 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021); *Baizan Guerrero*, 2019 WL 4889591, at *5 ("it is reasonable to infer that the operation of a New York deli with over $500,000.00 in annual sales" is subject to enterprise coverage).

Accordingly, this Court recommends finding that plaintiff's allegations are sufficient to conclude that plaintiff's employment falls under the FLSA's protections.

## C.    NYLL

As with the FLSA, the NYLL broadly defines an "employer." The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.* § 190(2). Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Khan v. Nyrene, Inc.*,

12

No. 18-CV-00557, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020) (quoting *Ntalianas et al. v. B & A Contracting of Landmark Inc. et al.*, No. 16-CV-5934, 2018 WL 1701960, at *3 (E.D.N.Y. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1582294 (E.D.N.Y. Mar. 31, 2018)).

As stated above, this Court finds that plaintiff was jointly employed by individual defendant Cruz and corporate defendant Barbu Gourmet under the FLSA, and, therefore, this Court applies the same standards to recommend finding that plaintiff was jointly employed by Cruz and Barbu Gourmet under the NYLL.[2] *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 128 (E.D.N.Y. 2011) ("Courts in this circuit have held that the same analysis applies when determining whether defendants are jointly liable as employers under the FLSA and the NYLL.").

### D. Minimum Wages

Both the FLSA and the NYLL require employers to pay employees at a minimum hourly rate. *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652. Plaintiff alleges that defendants employed more than 11 employees. Pl.'s Aff. ¶ 7. The applicable minimum wage under the NYLL for a New York City employer was $15.00 per hour from June 1, 2023 through December 31, 2023, and thereafter rose to $16.00 per hour. *See* N.Y. Lab. Law § 652(1)(a). Given that the minimum wage under the NYLL is higher than that of the FLSA for all relevant time periods,[3] this Court analyzes plaintiff's minimum wage entitlement under the NYLL. *See* 29 C.F.R. §

---

[2] As this Court finds that individual defendant Cruz and corporate defendant Barbu Gourmet were jointly plaintiff's employers, each defendant is jointly and severally liable under the FLSA and the NYLL for any damages award made in plaintiff's favor. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

[3] The applicable federal minimum wage rate in 2023 and 2024 was $7.25. *See* 29 U.S.C. § 206(a)(1)(C).

778.5.

To determine whether plaintiff was paid the applicable minimum wage, the Court must first determine the plaintiff's regular hourly wage rate. *See Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2023 WL 2583856, at *11 (E.D.N.Y. Mar. 21, 2023); *Xin Long Lin v. New Fresca Tortillas, Inc.*, No. 18-CV-3246, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019).  Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract."  29 C.F.R. § 778.108.  Because plaintiff was compensated on a weekly basis, the regular hourly rate is calculated by "dividing the salary by the number of hours which the salary is intended to compensate."  *Id*. § 778.113(a).

Under the FLSA, "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours."  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) (internal quotation marks and citation omitted); *see Brito v. ATA Freight Line, Ltd*., No. 20-CV-3132, 2021 WL 7830146, at *8 (E.D.N.Y. Aug. 24, 2021); *Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *8 (S.D.N.Y. Mar. 9, 2020) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement." (internal quotation marks and citation omitted)).  Similarly, a NYLL regulation provides that a "hospitality" employee's regular hourly rate is determined by dividing the employee's weekly earnings by the lesser of

14

forty hours or the hours actually worked.[4]  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5

(where "an employer fails to pay an employee an hourly rate of pay, the employee's regular

hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the

lesser of 40 hours or the actual number of hours worked by that employee during the work

week").

     Contrary to the rebuttable presumption and the applicable NYLL regulation, plaintiff

originally calculated his regular rate incorrectly based on all hours that he worked during the

work week.  *See* Damages Calc., Dkt. 20-6.  Since the governing law requires that the Court

calculate plaintiff's regular rate of pay by using the lesser of 40 hours or the hours actually

worked, the Court recommends calculating plaintiff's regular rate by dividing plaintiff's weekly

wages by 40 hours.  *See Chen*, 2023 WL 2583856, at \*12–13; *Urena v. 0325 Tuta Corp.*, No. 20-

CV-3751, 2022 WL 4284879, at \*4 (S.D.N.Y. Sept. 16, 2022), *report and recommendation

adopted*, 2022 WL 17249362 (S.D.N.Y. Nov. 28, 2022); *Jianmin Jin v. Shanghai Original, Inc.*,

No. 16-CV-5633, 2019 WL 3244187, at \*4 (E.D.N.Y. July 19, 2019), *aff'd*, 990 F.3d 251 (2d

Cir. 2021).

---

[4] Under the NYLL regulations, "any eating or drinking place that prepares and offers food or beverage for human consumption" is considered to be a part of the hospitality industry.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.1(b).  Plaintiff alleges that he worked as a cook and stockroom worker at defendants' deli/convenience store.  Pl.'s Aff. ¶ 4.  Since plaintiff's job duties necessarily included food preparation, the Court finds that plaintiff qualifies as a hospitality industry employee for purposes of the NYLL.  *See Melo v. Milagro Grocery Corp.*, No. 21-CV-4438, 2024 WL 4250267, at \*8 n.5 (E.D.N.Y. Sept. 26, 2024) (employee who worked behind the deli counter at grocery store qualified as a "hospitality industry employee"); *Pareja v. 184 Food Corp.*, No. 18-CV-05887, 2021 WL 3109621, at \*8 n.7 (S.D.N.Y. July 22, 2021) (classifying fruit stockers at a supermarket as employees in the hospitality industry), *report and recommendation adopted*, 2021 WL 3501229 (S.D.N.Y. Aug. 9, 2021); *Ramos v. Guaba Deli Grocery Corp.*, No. 20-CV-4904, 2021 WL 5563714, at \*9 n.9 (S.D.N.Y. Nov. 29, 2021) ("[g]iven that Plaintiffs' responsibilities included food preparation, the Court concludes that Guaba Deli qualifies as a 'restaurant'"); *Perez v. 50 Food Corp.*, No. 17-CV-7837, 2019 WL 7403983, at \*7 n.6 (S.D.N.Y. Dec. 4, 2019) (stating that employees are properly classified in the hospitality industry when they perform such tasks as "making salads, preparing sandwiches and other food items and cleaning the premises"), *report and recommendation adopted*, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

From June 1, 2023 until December 31, 2023, plaintiff alleges that defendants paid him $650 per week, and from January 1, 2024 until May 15, 2024, defendants paid plaintiff $800 per week.  Pl.'s Aff. ¶ 9.  Calculating plaintiff's regular rate based on a 40-hour work week, plaintiff's regular rate of pay from June 1, 2023 until December 31, 2023 was **$16.25** per hour ($650/40 hours) and from January 1, 2024 until May 15, 2024, his regular rate of pay was **$20** per hour ($800/40 hours).  The minimum wage from June 1, 2023 through December 31, 2023 was $15.00 and thereafter it rose to $16.00 per hour.  Pl.'s Aff. ¶ 12; Pl.'s Mem. at 13; N.Y. Lab. Law § 652(1)(a).[5]  Since plaintiff's regular rate was higher than the applicable minimum wage throughout his employment, the Court recommends denying plaintiff's claim for unpaid minimum wages.

### E.   Unpaid Overtime Wages (First and Second Claims)

Under the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a) and N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.2).  Here, plaintiff alleges that he regularly worked for defendants for 57 or 69 hours per week, but was not paid the requisite premium for those overtime hours.  Thus, plaintiff has sufficiently alleged claims against the defendants for unpaid overtime under the FLSA and the NYLL.

### F.   Wage Theft Prevention Act

The NYLL's WTPA requires that employers provide employees, at the time of hiring,

---

[5] Plaintiff incorrectly calculated his regular rate by dividing his weekly pay by the total number of hours he worked per week.  Specifically, from June 1, 2023 to September 30, 2023, during which plaintiff worked 69 hours per week, plaintiff calculated his regular rate as $9.42 per hour.  Compl. ¶ 34; Pl.'s Aff. ¶ 10.  From October 1, 2023 to December 31, 2023, during which plaintiff worked 57 hours per week, plaintiff calculated his regular rate as $11.40 per hour.  *Id*.  From January 1, 2024 to March 18, 2024, during which plaintiff worked 57 hours per week, plaintiff calculated his regular rate as $14.04 per hour.  *Id*.  From March 19, 2024 to May 15, 2024, during which plaintiff worked 69 hours per week, plaintiff calculated his regular rate as $11.59 per hour.  *Id*.

16

with a wage notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . .; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195(1)(a).

In addition, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . [the] rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages." N.Y. Lab. Law § 195(3). Further, "[t]he Supreme Court recently held that a technical violation triggering a statutory damage award only confers Article III standing if the plaintiff demonstrates an actual and concrete injury resulting from that violation." *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929, 2022 WL 18999832, at *6 (E.D.N.Y. Dec. 13, 2022) ("*Guthrie I*") (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), *report and recommendation adopted as modified*, 2023 WL 2206568 (E.D.N.Y. Feb. 24, 2023), *aff'd*, 113 F.4th 300 (2d Cir. 2024) ("*Guthrie II*"). A "concrete" injury is one that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *TransUnion*, 594 U.S. at 417 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340–41 (2016)). A plaintiff may establish standing to bring a WTPA claim by demonstrating "some causal connection between the lack of accurate notices and [a] downstream harm." *Guthrie II*, 113 F.4th at 308.

Here, plaintiff sufficiently alleges that defendants failed to provide plaintiff with the

17

wage notice required by the WTPA, section 195(1)(a) of the NYLL.  Plaintiff alleges that defendants' failure to provide him with a wage notice has "caused a substantial 'injury in fact' in the form of financial instability, emotional distress, and other associated damages" as well as "hindered the Plaintiff's ability to determine and assert his legal rights and entitlements under the New York Labor Law."  Compl. ¶ 62.  In addition, the Complaint sufficiently alleges that defendants failed to provide plaintiff with proper wage statements in violation of section 195(3) of the NYLL.  *See* Compl. ¶¶ 24, 40, 65.  Plaintiff, therefore, has adequately stated claims for violations of the WTPA.  *See Espinoza*, 2022 WL 987429, at *15.

## III.    Relief

A party's default "is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  Accordingly, "[i]f the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'"  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).  Plaintiff must establish that he is entitled to the damages sought for violations of the FLSA and NYLL.

### A.    Unpaid Overtime Compensation

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him."  *Lu Nan Fan v. Jenny & Richard's Inc.*, No. 19-CV-6963, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotation marks and

citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019).  Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn statements "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed, is considered a sufficient basis for the determination of damages in this context."  *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *8 (E.D.N.Y. Mar. 31, 2015).  "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate."  *Lu Nan Fan*, 2019 WL 1549033, at *9.

Here, plaintiff has submitted his own affidavit describing the dates of his employment, along with average hours worked and wages paid per week.  *See* Pl.'s Aff.  Based on those representations, plaintiff's counsel calculated the damages due to plaintiff.  *See* Decl. of Lina Stillman ("Stillman Decl."), Dkt. 15-4; *see also* Dkt. 20-6.  In light of defendants' default, the evidence submitted by plaintiff stands uncontroverted, and, therefore, plaintiff has provided a sufficient basis upon which to determine damages.

Under the FLSA and the NYLL, an employer must pay an employee overtime compensation at 1.5 times the employee's regular rate of pay for each hour worked in excess of forty hours per week.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata*, 723 F.3d at 200 (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL).  "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his

19

regular hourly rate falls below the minimum wage) by one and one-half." *Baizan Guerrero*, 2019 WL 4889591, at *8 (internal quotation marks and citation omitted).

Plaintiff sufficiently demonstrates that defendants failed to pay him at time-and-a-half throughout his employment, despite the fluctuation in his hours and pay over the course of his employment with defendants. *See* Pl.'s Aff. ¶¶ 14–15.

Since plaintiff was paid at a rate higher than the minimum wage, the Court applies an overtime rate of 1.5 times plaintiff's regular rate, as discussed below. *See* 29 C.F.R. § 778.110(a) ("For overtime hours of work the employee must be paid . . . a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4 ("An employer shall pay an employee for overtime at a wage rate of 1-1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek.").

Plaintiff has established that between June 1, 2023 and September 30, 2023, he worked 69 hours per week and, thus, should have received overtime pay for 29 hours per week (69 hours - 40 hours = 29 hours). Pl.'s Aff. ¶ 10(a). Thus, for that period (17[6] weeks), plaintiff should have been compensated for 29 hours per week at an overtime rate of $24.38 ($16.25[7] x 1.5 = $24.38). Plaintiff is owed **$12,019.34** ($24.38 x 29 hours x 17 weeks = $12,019.34) in unpaid overtime for the period June 1, 2023 through September 30, 2023.

From October 1, 2023 until December 31, 2023, plaintiff worked 57 hours per week and should have received overtime pay for 17 hours per week (57 hours - 40 hours = 17 hours). Pl.'s Aff. ¶ 10(b). For this period (13 weeks), plaintiff should have been compensated for 17 hours

---

[6] Plaintiff rounded down the number of weeks during this period.

[7] *See* regular rate of pay in Section II.D, above.

per week at an overtime rate of $24.38 ($16.25 x 1.5 = $24.38).  Plaintiff is owed **$5,387.98** ($24.38 x 17 hours x 13 weeks = $5,387.98) in unpaid overtime for the period October 1, 2023 through December 31, 2023.

From January 1, 2024 until March 18, 2024, plaintiff worked 57 hours per week and should have received overtime pay for 17 hours per week (57 hours - 40 hours = 17 hours).  Pl.'s Aff. ¶ 10(c).  For this period (11 weeks), plaintiff should have been compensated for 17 hours per week at an overtime rate of $24.38 ($20.00[8] x 1.5 = $30.00).  Plaintiff is owed **$5,610.00** ($30.00 x 17 hours x 11 weeks = $5,610.00) in unpaid overtime for the period January 1, 2024 through March 18, 2024.

From March 19, 2024 until May 15, 2024, plaintiff worked 69 hours per week and should have received overtime pay for 29 hours per week (69 hours - 40 hours = 29 hours).  Pl.'s Aff. ¶ 10(d).  For this period (8[9] weeks), plaintiff should have been compensated for 29 hours per week at an overtime rate of $30.00 ($20.00 x 1.5 = $30.00).  Plaintiff is owed **$6,960.00** ($30.00 x 29 hours x 8 weeks = $6,960) in unpaid overtime for the period March 19, 2024 through May 15, 2024.

In sum, this Court recommends awarding plaintiff a total of **$29,977.32** ($12,019.34 + $5,387.98 + $5,610.00 + $6,960.00 total = $29,977.32) in unpaid overtime wages.

### B.    Liquidated Damages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100 percent of the wages due.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to" the

---

[8] *See* regular rate of pay in Section II.D, above.

[9] Plaintiff rounded down the number of weeks during this period.

unpaid minimum and/or overtime wages, *Barfield*, 537 F.3d at 150; however, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA. *See* 29 U.S.C. § 260. Similarly, the NYLL permits employees to recover "an additional amount as liquidated damages equal to one hundred percent of the total [amount] of such underpayments found to be due," "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA." *Jian Hua Li v. Chang Lung Grp. Inc.*, No. 16-CV-6722, 2020 WL 1694356, at \*14 (E.D.N.Y. Apr. 7, 2020) (internal quotation marks and citation omitted). However, "[l]iquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Id.* (citing N.Y. Lab. Law § 198(1-a), (1-d)).

Here, defendants, having defaulted, have failed to make a showing of good faith. *See Lu Nan Fan*, 2019 WL 1549033, at \*11. As this Court has calculated plaintiff's damages according to the NYLL, plaintiff is entitled to 100 percent of his unpaid overtime wages as liquidated damages. Accordingly, this Court recommends awarding plaintiff **$29,977.32** in liquidated damages.

> **C.    Statutory Damages under the Wage Theft Prevention Act (Third and Fourth Claims)**

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of

22

hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule. After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b). Further, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotations and citation omitted). After February 27, 2015, violations of Section 195(3) carry damages of $250 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-d).

Here, plaintiff alleges he never received a wage notice or wage statements from defendants at any point during the course of his employment. *See* Compl. ¶¶ 61-66. Because plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 20 days after February 27, 2015, this Court recommends awarding plaintiff the maximum statutory damages of $5,000 for violations of N.Y. Lab. Law § 195(1), and $5,000 for violations of N.Y. Lab. Law § 195(3), for a total of **$10,000**. *See Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin*, 2019 WL 3244187, at *5.

### D.    Prejudgment Interest

Plaintiff seeks an award of prejudgment interest pursuant to New York law. *See* Pl.'s Mem. at 14–15. "[Alt]hough the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does." *Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-01675, 2024 WL 3344001, at *12 (E.D.N.Y. July 9, 2024) (citing *Fermin*, 93 F. Supp. 3d at 48–49). Prejudgment interest is available for unpaid overtime wages under the NYLL, but not on liquidated damages or amounts awarded under the WTPA. *See Fermin*, 93 F. Supp. 3d at 49.

23

Prejudgment interest on NYLL damages is calculated at a rate of nine percent per annum. *See* N.Y. C.P.L.R. § 5004(a); *Espinoza*, 2022 WL 987429, at *19. In cases in which damages are "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts have discretion in determining a reasonable date from which to award prejudgment interest. *See Nam v. Ichiba Inc.*, No. 19-CV-1222, 2021 WL 878743, at *9 (E.D.N.Y. Mar. 9, 2021).

Here, plaintiff incurred damages at various times throughout his employment. Thus, this Court finds that the midway point between when plaintiff began and ceased working for defendants is a reasonable intermediate date for purposes of calculating prejudgment interest. *See Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) ("When unpaid wages were incurred at various times, . . . [s]imple prejudgment interest is calculated from a singular, midpoint date . . . through the date judgment is entered" (alterations in original) (internal quotation marks and citation omitted)); *see also Hinson v. Tammys Nail Utopia LLC*, No. 23-CV-2395, 2024 WL 3611409, at *20 (E.D.N.Y. July 31, 2024) (using the midpoint of plaintiff's employment to calculate prejudgment interest), *report and recommendation adopted*, Order dated Oct. 2, 2024. The midpoint between June 1, 2023, and May 15, 2024—plaintiff's term of employment—is November 22, 2023. Thus, this Court recommends awarding plaintiff prejudgment interest at a daily rate of **$7.39** ((0.09 x $29,977.32) / 365 = $7.39) from November 22, 2023, through the date judgment is entered.

### E. Costs

Plaintiff seeks $721.00 in costs. "Generally, a prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendants as long as those costs are tied

to determinable, out of pocket disbursements." *Aponte v. 5th Ave. Kings Fruit & Vegetables Corp.*, No. 20-CV-5625, 2022 WL 17718551, at *10 (E.D.N.Y. Dec. 15, 2022) (internal citations omitted); *see* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). To recover these costs, plaintiffs are required to "submit adequate documentary evidence in support." *Tacuri v. Nithin Constr. Co.*, No. 14-CV-2908, 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015). Here, plaintiff provides no supporting documentation to explain his request for $721.00. *See* Pl.'s Mem. at 2; Stillman Decl. ¶ 3; Pl.'s Aff. ¶¶ 2, 25. However, "[f]iling fees are recoverable without supporting documentation if verified by the docket.'" *US All. Fed. Credit Union v. M/V Kamara Fam.*, 691 F. Supp. 3d 646, 665 (E.D.N.Y. 2023). Here, the docket indicates that plaintiff paid the $405.00 filing fee. Dkt. 1. Therefore, this Court recommends awarding plaintiff costs in the amount of **$405.00**. *See NYQF Inc. v. Sigue Corp.*, 781 F. Supp. 3d 104, 123 (E.D.N.Y. 2025) (awarding plaintiff the $405.00 filing fee in costs in the absence of documentary support in its request for costs).

## Conclusion

For the reasons set forth above, this Court respectfully recommends:

(1) granting, in part, plaintiff's motion for a default judgment against defendants Barbu Gourmet Deli Inc. and Yonni A. Cruz, jointly and severally, and entering judgment against the defaulting defendants;

(2) awarding plaintiff damages totaling **$69,954.64**, consisting of **$29,977.32** in unpaid overtime compensation, **$29,977.32** in liquidated damages, and **$10,000** in statutory damages;

(3) awarding plaintiff **$405** in costs; and

(4) awarding plaintiff prejudgment interest at a daily rate of **$7.39** from November 22, 2023, through the date judgment is entered, but

25

(5) denying plaintiff's motion to the extent plaintiff seeks damages for unpaid minimum wages.

A copy of this Report and Recommendation is being electronically served on Counsel. This Court directs plaintiff's counsel to serve a copy of this Report and Recommendation on defendants by overnight mail and first-class mail and to file proof of service on ECF by **March 5, 2026**.

Any objections to the recommendations made in this Report must be filed with the Honorable Ramon E. Reyes within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 16, 2026**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated: Brooklyn, New York
    March 2, 2026

s/ James R. Cho
James R. Cho
United States Magistrate Judge